Good morning, Your Honors. Welcome to the Court. I'm Justin Pierce on behalf of Dida Makaj. Mr. Makaj has been a lawful permanent resident of the United States for almost the last 15 years. He has an American citizen wife who he's been married to for some time. He has three American-born children. The government has found Mr. Makaj deportable, and in the proceedings below the immigration judge determined that notwithstanding his petitions for asylum, withholding under the statutes and withholding under the convention against torture, that he should be deported. We're here today, Your Honors, because we believe that the immigration judge applied the wrong legal standard in his claim under the convention against torture. I think that's... If you're correct, counsel, what's the remedy? The remedy is, I would say, at a minimum, a remand. However, I believe that this Court can decide the matter as a matter of law because under the convention against torture, the Ninth Circuit has taken the position that a finding of previous torture, which in this case the immigration judge recognized, a finding of torture creates a presumption that future torture will exist unless the government shows that conditions have changed individually to such a degree that... to rebut that presumption. In this case, I believe that the Court can find that as a matter of law. The judge below recognized that there had been torture in the past, in Mr. Makaj's past and in his family as well, recognized that his brother had been murdered in Albania, recognized that several of his family members have applied for and been granted asylum in other countries, including the United States. So the question of torture has probably already been dealt with, and which is why we present to this Court that the judge probably didn't apply the correct legal standard, given the fact that he found torture but then went on to say, but he won't be tortured if he's returned, without addressing the presumption that the government now has to rebut. But we do have... but there was evidence in the record that he had been back to Albania in the meantime and had done so without any problems, that he had his mother and sister living in Albania. That's right. And I'd like to address those particularly because I think that they've been overstated with regard to whether there's been problems or not. The first point in that is his last trip to Albania was nearly 10 years ago. In that trip, he went specifically for the purpose of his brother's funeral. His brother had been killed, the family believes, by the communist faction, or in the alternative, the blood feuding that goes on, which is, by the way, in the record of the country conditions report. The important thing, though, is that he went back about 10 years ago for that purpose. During that visit, his wife received a phone call that he wasn't going to come out alive. His wife was threatened. What happened thereafter, I think, is extremely important. Although his mother and sister remain in the country, and he had been back a couple of times previously, over 10 years ago, he never once returned to the country after that time. I think that's very indicative of at least his own personal feeling as to his safety in going back, notwithstanding his mother's there. Judge Bybee, regarding the issue of his mother being there, this is something that the immigration judge wouldn't allow Mr. McKay to testify to because he said it was speculative as to why his mother and sister haven't had any, quote, problems since they've been back there. And we can get into that in the due process issue as to why he didn't do that. But even in the country conditions report, the blood feuding that goes on in Albania is in some way limited to adult males. Well, is the blood feuding attributable to the government? It is in the fact that the government is aware of the problem and does not take steps to stop the problem. And under the Convention Against Torture, the question is not so much whether the government is actively involved in the problem, but if they're passively involved, Judge Schwartzer, in the sense that they won't do anything about it, which is what the case is in Albania. And even according to the country conditions report that the government relies on almost exclusively, that's made clear in that record. And so the question really is to this court, has he met his burden? And in the Ninth Circuit, the burden is just over 50 percent, more likely than not. Is he going to be tortured if he goes back? The history of this family and the many different things that they've been through, from the five years in a labor camp to Mr. Makai's own imprisonment while in the military for expressing anti-communist beliefs, was beat to the point of unconsciousness, was put into a cell not big enough for him to lay down in, was fed bread and water twice a day, was... What about the Ventura decision? I'm sorry? What about the Ventura decision? Doesn't that require us to send him back? If this court, and again, the matter of remand is, I'm not sure that the Ventura decision requires this court to do it. If as a matter of law, the court here, and I would point to the Nehru decision, Nehru v. Gonzalez, where the court was presented with a very similar situation, whether to send the petitioner back to the country. The court has told us, I would say rather explicitly, that the court is not to make determinations of the first instance to be made by the agency. And remand may be the more appropriate... Of course it's the appropriate answer. I wouldn't hesitate to offense about that. Well, does the court have any questions? I guess if the court is inclined to remand this, then we would be fine with that because we believe that upon remand, although I'd like to address then my second argument. On remand, we believe this should be remanded to a different immigration judge. But our remand would be to the BIA to decide this in the first instance, not to the IJ. Okay, that would make sense. You still have some time remaining. Why don't we hear from the government on this point, and you'll still have all of your time. Great. Thank you. Good morning, Your Honor. My name is Bethany Hauser for Attorney General Gonzalez. This is a case... There is no question here that Mr. Mackay suffered in Albania under the communist regime. That's why the government granted him asylum when he initially came to the country. We're all here today because conditions in the... Mr. Mackay's situation in the United States has changed because he was convicted of various crimes and he conceded that one of those convictions made him removable. And we're also here because conditions in Albania have changed significantly, most notably because the communist government that persecuted Mr. Mackay in the 1980s... That's all very true. But I think what we're asking you is about Ventura. I don't see that the immigration judge gave an explanation for his ruling on the Convention Against Torture. Is there some place he gives it? Excuse me, he doesn't... Where does he explain why he is turning down the Convention Against Torture claim? It's a very brief paragraph where he discusses... Where does he explain it? He explains that in the immigration judge's decision... Yes. He has a paragraph entitled... Tell me where it is. ER, if you have the excerpts of record, it's page 102. What? 102, I believe it's page 58 of the record, of the administrative record, page 102 of the excerpts of record. He has a paragraph about the Convention Against Torture. 58 of the... No, 102 of the ER. I'm sorry. Okay. But the BIA never dealt with it. The BIA didn't deal with it because Mr. Mackay's brief on appeal to the BIA did not allege any error in the Convention Against Torture. Well, that's just the ruling. That's not an explanation. That's the ruling. He's under our precedence. He's compelled to give an explanation. He explains here that Mr. Mackay has not met his burden of showing that it's more likely than not. And he discusses the facts earlier in his analysis. Where is that? At pages 99 to 100, where he... Oh, hold on. He's not addressing the torture claim, is he? Counsel, are you arguing that he waived his CAT claim before the BIA? He failed to argue to the BIA that there was any error in the CAT analysis. He did refer to it in his notice of appeal, the first paragraph. He referred to it in the notice of appeal, yes. So it was before the BIA, although he didn't specify the error. But why would he put it in the notice of appeal if he didn't consider that there was error? I can't answer that, perhaps. Was he counsel before the BIA? I believe he was. I come back to Ventura, which seems to me to tell us we can't make a determination that belongs to the agency. Yes. If your conclusion is that the immigration judge did not address the CAT claim, you would need to remand him. He addresses the persecution claim very clearly there at 99 to 100, but I don't see how he addresses the CAT claim. This is not a streamlined case. Is that correct? We're not entitled to look through the BIA's decision to the IJ's decision. No, it's not a streamlined case. That's a very good point. The board decision goes through the claims of error, and it does not specifically address the CAT claim at all. So if he's raised this question to the BIA, then the BIA has failed to address it, and we should remand to the BIA. Yes. So do you have an argument as to why he did not raise it to the BIA? I mean, how do you interpret the notice of appeal? Do I make myself clear? Is it an argument that he did not raise it to the BIA? It's simply that he failed to allege any error as to it. So we look at the one might look at the notice of appeal as simply stating everything that had ever been at issue and then look at his arguments as narrowing that. But that might be a tenuous claim. I'm not. If the board did not address, and opposing counsels argue that the board did address the CAT claim, but if the board did not address the CAT claim, then there's a, and you have to remand it to the board to address the CAT claim in the first instance. Anything further, counsel? If the court has no questions about any of the other issues in the case, then we'll rest on our briefs. Thank you. Mr. Pierce, do you want to address the question as to whether or not Mr. McKay has waived his CAT argument? I will address that, Your Honor. I think that Judge Schwartzer has hit it. It was raised in the notice of appeal. The Ninth Circuit case law does not, and he was not represented below. His brief is signed pro se, which this court has determined that it's supposed to construe liberally for a pro se complainant. It was raised. It put the BIA on notice. I think in my briefs I've quoted the language. He cites the standard exactly that he should have been granted under the convention as torture. The one point, and it's not a high standard. The important cases would be the Latta case, the Thomas case, where it's not even a requirement to be discussed in the briefs. It just has to be raised to the BIA. And an important point, and I think this is why maybe this court can decide this, as I have indicated below, without a remand, is I think that under the board's order, the board addressed whether it believed there was a due process violation. And in its final statement, they said they find no prejudice to the respondent regarding the due process, nor are we able to find reversible error in the record before us, which suggests that they considered more than simply just the due process issue.  Well, the record, and including the briefs, petitioned the BIA to look at the convention as a torture issue. It said it didn't find any error. I think that's wrong. I think that when you look at what the evidence, the unrebutted evidence that's been presented, including the immigration judge's finding of credibility on behalf of my client, there's basically an unrebutted that, and including the government, the government didn't address this in its brief. The government simply said, oh, well, he's waived that and moved on, rather than address it head on. I think that's very telling as to even what the government may think of it. I think it's pretty clear that there's been evidence of torture. If he's returned, there's a presumption. I think we've dealt with why that presumption should hold and why the government has not rebutted that presumption. And we ask this court to, as in the Nehru decision, to grant the petition. We're in the alternative at a minimum remand for a finding. All right. Thank you, counsel. Case is submitted. Thank you.
judges: Noonan, Bybee, Schwarzer